

FEDERAL CRIMINAL DEFENSE

Daniel W. Stiller

Box 511130
Milwaukee, Wisconsin 53203

Telephone 414-207-3190
E-mail: dan@dstillerllc.com

Website: www.dstillerllc.com

August 17, 2018

Hon. David E. Jones
United States District Court
517 East Wisconsin Avenue
Milwaukee, Wisconsin 53202

RE:     *United States v. Jack Clayborne*, Case No. 18-CR-109

Your Honor:

A scenario made for TV dramas:

> A witness sees the commission of a crime with her own eyes and law
> enforcement later shows her a series of photographs. Asked whether the
> perpetrator appears within them, she says yes and points out a particular
> person depicted in those photos. But the person she identifies isn't the
> person accused of committing the crime.

Under the law, the described scenario involves the epitome of *Brady* material: to the
accused, few things are more exculpatory than an eyewitness's identification of someone
else as the perpetrator. *Brady v. Maryland*, 373 U.S. 83 (1963) (imposing upon the
prosecution a constitutional obligation to disclose evidence favorable to the accused).

The described scenario exists in Jack Clayborne's case, only with a twist that defies the
Constitution. In Clayborne's case, the government has attempted to satisfy its obligation
under *Brady* by disclosing the fact of the eyewitness' identification of other-than-
Clayborne. But the government is currently concealing the eyewitness's identity,
rendering the witness unavailable to the defense.[1]

Included as Exhibit 1 to this letter is a report depicting the dramatic scenario I've just
depicted, including concealment of the exculpatory witness' last name. But other less-

---

[1] To the extent the government's position is that "we'll disclose at some later time, when we believe
disclosure is appropriate," that tends to place a prosecutor in defense counsel's shoes. And it ignores
too many circumstances, including: (1) the relevance, as I've argued, of the withheld evidence to the
evaluation of pretrial motions; (2) that memories fade and witnesses can become unavailable; and (3)
that information the defense might glean from any particular witness has the capacity to produce
other useful avenues for the defense to explore.

Hon. David E. Jones
August 17, 2018
Page 2

dramatic scenarios exist, ones that aren't materially different in terms of the government's self-sanctioned interference with the defense function. As my letter of July 31 stated, it's impermissible for the government to instruct a witness to refrain from cooperating with the defense and, on that basis, it's my position that the government's concealment of fact witness's identities from the defense constitutes an even greater—and, therefore, more impermissible—interference with Mr. Clayborne's Fifth and Sixth Amendment rights. (R.31.)

At the conclusion of the August 9 status hearing, the Court asked the defense to particularize what it is seeking. This is what I believe I'm entitled to:

> In relation to the criminal episode underlying the charged crimes, the name of any person known by the government as someone who visually observed any person believed by the government to have participated in that criminal episode.[2]

Also during the August 9 hearing, the Court asked the parties to state what they're willing to abide by in terms of conditional disclosure. This topic connects with the Court's stated consideration of an approach by which the government would be required to disclose the relevant information on terms described by the Court as "lawyers' eyes only." In that context, the Court has referenced a civil local rule, which I assume to be Civil Local Rule 26(e). I interpret the Court's use of the "lawyers' eyes only" phrase to mean that the disclosed information would be available to the defense team, but withheld from Mr. Clayborne.[3] While I maintain that any restriction of the defense's receipt of the

---

[2] I recognize that the Court might wish for greater particularization, as in "The defense requests disclosure of the names of witnesses A, B, and C." I ask the Court to please understand that discovery in this case is on-going, and there are indications that law enforcement's investigation continues (as examples, discovery was received as recently as yesterday, and it depicts the issuance and execution of a search warrant during the pendency of this case). Given the fluidity of things, I'm not particularly comfortable staking out a ground as particularized as, for instance, "witnesses A, B, and C." Instead, I've tried to narrowly define the relevant class of witnesses as a means of capturing those who are known to me and those who aren't. That said, the search warrant affidavit docketed in Case No. 18-M-61 suggests—at a minimum—"P.P." and "F.W.," as described by that document's paragraphs 32 and 34, as eyewitnesses whose names need to be disclosed.

[3] The phrase "defense team" is purposeful, reflecting the need for a defense investigator's access to the witness's names. Dissemination of the relevant information within the defense team seems consistent with the approach taken by Civ. L.R. 26(e)(1)(D)(iv), which authorizes disclosure of otherwise "confidential" discovery materials to "consultants, investigators, or experts (collectively 'experts') employed by the parties or counsel for the parties to assist in the preparation and trial of the lawsuit."

relevant information is inappropriate, I reiterate the position I've taken in open court: "lawyers' eyes only" disclosure is certainly preferable to the status quo and if it doesn't give the defense what it wants, it at least offers what the defense fundamentally needs. On that basis, I agree to abide by any reasonable restriction on my receipt of the relevant information, to include withholding the witnesses' names from my client.

Finally, I want to quickly (and again) address what the government has thus far argued as grounds for non-disclosure. Those grounds, as they've been stated to the court, rest on the government's view that Mr. Clayborne is a dangerous threat to witness safety.[4] On that basis, the government invokes Criminal Local Rule 16(a)(2) and its exception from the government's presumptive disclosure requirements of materials that, if disclosed, are reasonably believed by the government to "jeopardize the safety of a person other than the defendant." From there, the government advances a systemic argument, suggesting that should it be ordered to disclose the materials Mr. Clayborne seeks, it might revisit its on-going participation in this District's so-called open-file discovery policy.[5]

As to the former, the government exaggerates the force of the local rule. Clayborne is advancing a constitutional claim to the relevant information. Either the local rule is interpreted in a manner consistent with what the Constitution requires, or it's invalid.

As to the latter, I acknowledge this Court's general responsibility for promoting the orderly administration of criminal justice. And I personally regret that my pursuit of what Mr. Clayborne is entitled to might limit the discovery available to my next client (or the next defendant, regardless of who represents that person). But, respectfully, neither interests in the orderly administration of justice nor concerns about the breadth of discovery available to the next defendant trump Jack Clayborne's constitutional right to the identities of percipient witnesses to the criminal episode underlying the charges pending against him.

I hope this submission is helpful to Your Honor's consideration of the relevant issue.

---

[4] Whether the government's perception is accurate or inaccurate isn't an issue I'm challenging at this time.

[5] On this issue, I noticed during the August 9 hearing the passive presence in the courtroom's otherwise empty pews of the U.S. Attorney's Criminal Chief. As Wisconsin's former federal defender, the message silently conveyed by the presence of a stakeholder's titled representative in connection with a mere status conference isn't lost on me.

DStillerLLC

Respectfully submitted,

*/s/ Daniel W. Stiller*

DANIEL W. STILLER

DStillerLLC