UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                                Case No. 18-cr-109-pp

JACK A. CLAYBORNE,

        Defendant.

**ORDER SUSTAINING GOVERNMENT'S OBJECTIONS (DKT. NO. 45), VACATING MAGISTRATE JUDGE'S ORDER FOR DISCLOSURE (DKT. NO. 44) AND DENYING DEFENDANT'S LETTER MOTION FOR DISCLSOURE (DKT. NO. 31)**

On July 27, 2018, the defendant filed a letter motion, asking Magistrate Judge David E. Jones for an order requiring the government to disclose the names of certain witnesses. Dkt. No. 31. On October 19, 2018, after hearings and briefing, Judge Jones granted that motion in part. Dkt. No. 44. He ordered the government to disclose the name of witness "P.P." not later than sixty days prior to the final pretrial conference, on an attorney's-eyes-only basis. Id. On November 1, 2018, the government objected to that order. Dkt. No. 45. The defendant responded to the government's objections on November 15, 2018. Dkt. No. 46. On December 13, 2018, this court held a hearing on the government's objections, dkt. no. 52, and on December 21, 2018, in compliance with the court's order, the parties filed a joint status report regarding their efforts to try to resolve the issue in the way the court had

1

suggested, dkt. no. 53. The court now sustains the government objections, vacates Judge Jones's order and denies the defendant's letter motion to compel disclosure.

I. **BACKGROUND**

   A. Procedural History

On May 15, 2018, the grand jury returned a three-count indictment charging the defendant (and co-defendant, Sylvance Brown) with one count of carjacking, one count of brandishing a firearm during a crime of violence and one count of being a felon in possession of a firearm. Dkt. No. 14. The clerk's office assigned the case to Judge Jones for pretrial processing. On June 1, 2018, Judge Jones granted the defendant's unopposed motion to declare the case complex and vacated the previously-set scheduling deadlines. Dkt. No. 26. There is no scheduled trial date, but pretrial motions are due January 18, 2019. Dkt. No. 48.

On July 27, 2018, the defendant submitted a "letter/motion" purporting to "place a discovery issue on the Court's radar screen[.]" Dkt. No. 31. The letter informed Judge Jones that, through the discovery the government had provided, he had learned that there were multiple eyewitnesses to the carjacking and the events immediately following. Id.  The letter said that the government had concealed the names of these witnesses; the defendant argued that the his Fifth and Sixth Amendment rights required the disclosure of the witnesses' names. Id. at 2.

2

Judge Jones held status conferences on July 30 and August 9, 2018; at the conclusion of the August 9 hearing, he directed the parties to reduce their arguments to writing and to complete briefing no later than August 29, 2018. Dkt. No. 34. On September 11, 2018, after reviewing the briefs, Judge Jones conducted another status conference. Dkt. No. 39. He informed the parties of his intent to require the government to remove certain redactions and said he would issue a written order. Id. Judge Jones issued the order on October 19, 2018. Dkt. No. 44.

B.  Judge Jones's October 19, 2018 Order (Dkt. No. 44)

Judge Jones recounted the allegations contained in the criminal complaint (dkt. no. 1). He noted that at defendant's arraignment, the government had confirmed that it would follow its open file policy "as memorialized in this District's Crim. L.R. 16(a)." Dkt. No. 44 at 3.

Judge Jones addressed the government's proffered reasons for keeping the identities of witnesses P.P. and F.W. concealed. Id. He rejected the government's argument that it may choose to abandon its open file policy, finding that Criminal Local Rule 16(a)(2) provided a "redact-and-challenge" process which contemplated the exact process in which the parties currently were engaged. Id. at 4-6. He commented that the Local Rules did not contemplate that the government would abandon its commitment to an open file policy as a reaction to an unfavorable judicial determination on a challenged redaction. Id. at 5.

Judge Jones agreed with the government that defendants do not have a general right to discovery in federal criminal cases. Id. at 6. He pointed out, however, that (a) "courts retain the authority to require pre-trial disclosure of potential witnesses," id. at 6 (citing United States v. Napue, 834 F.2d 1311, 1317-19 (7th Cir. 1987)); and (b) that Judge Pepper's standard procedures required parties to submit witness lists seven days prior to the date of the final pretrial conference. Id. Accordingly, Judge Jones opined that "the identifications sought here are a highly likely inevitability; a matter of when, not if." Id. Moreover, Judge Jones commented on the narrow and potentially crucial nature of the defendant's request, noting that the defendant had asked only for the names and that F.W. and P.P. were the only two witnesses who also provided identification through a photo array; "the process of which is not uncommonly the subject of a defense challenge." Id. Judge Jones did not say why the defendant needed P.P. or F.W.'s names beyond the prospect that identification through a photo array could be be the subject of a defense challenge.

As for the government's argument that the so-called informer privilege protected P.P. from having her name disclosed, Judge Jones cited United States v. Wilburn, 581 F.3d 618, 623 (7th Cir. 2009) as the seminal case on the issue, remarking that P.P. fit into neither the definition of a "tipster" nor the definition of a "transactional confidential informant." Id. at 7. He observed that even if he found P.P. to be a transactional confidential informant, a court could order the disclosure of the identities of confidential informants upon a showing

that the defendant's "genuine need of informant disclosure . . . outweighs the public's interest" in maintaining secrecy. Wilburn, 581 F.3d at 623. Judge Jones found that the defendant had demonstrated a genuine need: "the integrity of the photo array and identification process can be of vital importance," dkt. no. 44 at 7, and called the balance between the defendant's need and the risk of jeopardizing the safety of the witness the "crux" of the issue.[1]

Judge Jones then articulated several reasons why he did not find the potential danger to P.P. to be particularly high:

- 1) These defendants were not associated with a gang and are in custody pending trial.

- 2) F.W.'s identity has been known since the trial of Eric Booker and the government had not alleged that she has been threatened in any way.

- 3) The government had not given a reason for P.P. to be at greater risk than F.W.

Id. at 7-8. With these findings, Judge Jones concluded that "the United States has not shown that the interests of secrecy and safety outweigh the defendants' need for the requested information." Id. at 8-9. Nevertheless, Judge Jones placed the following limits on the disclosure of P.P.'s name: (1) the government would disclose it on an attorney's-eyes-only basis; and (2) the government need

---

[1] At page eight of his order, Judge Jones noted that the government had agreed to release the name of F.W. out of an abundance of caution for a Brady v. Maryland violation. Id. at 8. The remainder of this order concerns the release of P.P.'s name.

not disclose P.P.'s name until sixty days prior to the final pretrial conference. Id. at 9.

      C. <u>Government's Objections (Dkt. No. 45)</u>

The government's objection raised three arguments. Dkt. No. 45. First, the government argued that neither the Constitution, the Rules of Criminal Procedure nor the Local Rules provided a basis for the court to deviate from its normal requirement that the government disclose the identity of trial witnesses seven days before the final pretrial conference. Id. at 3. The government also contended that under the "redact and challenge" procedure outlined in the Local Rules, it should prevail, pointing out that the Local Rules rules exempt confidential informant identifying material from open file discovery. The government maintained that even if P.P. is not a confidential informant, the government can redact her name if it "reasonably believes" that releasing her identity could "jeopardize [her] safety." Id. at 5.

Second, the government argued that P.P. is a "classic civilian tipster" whose identity is not discoverable under Seventh Circuit precedent. Id. at 6-7 (citing <u>Wilburn</u>, 581 F.3d at 623). It contended that Judge Jones erred by finding that P.P. fell between the categories of "tipsters" and "transactional witnesses," but argued that even if P.P. is a transactional confidential informant, the defendant had not shown a genuine need for the disclosure of her identity. Id. at 7 (citing <u>United States v. Valles</u>, 41 F.3d 355, 358 (7th Cir. 1994)). The government argued that the defendant had not provided "a shred of

6

evidence" in support of a potential contention that the identification procedure in P.P.'s identification was flawed in any way. Id.

Finally, the government argued that Judge Jones improperly weighed the threat that disclosure posed to P.P.'s safety. Id. at 8. It distinguished P.P. from F.W. by noting that (1) P.P. had identified the defendant in a photo lineup, whereas F.W. was not able to identify the defendant in a photo lineup; and (2) F.W. now resides "thousands of miles away, unlike P.P." Id. at 8-9. Given P.P.'s proximity and the fact that P.P. possessed inculpatory, as opposed to exculpatory, information, the government contended that the court should not rely on the fact that there had been no threat to F.W.'s safety to calculate the threat that P.P. faced. The government argued that Judge Jones's "Attorneys' Eyes Only" restriction would be ineffective.

   D. Defendant's Response (Dkt. No. 46).

The defendant responded, contending that the government's objections overlooked the standard of review for district judges reviewing a magistrate judge's order on non-dispositive motions; a district judge must find that the magistrate judge clearly erred. Dkt. No. 46 at 1-2. Standard aside, the defendant argued that (1) P.P. ought to be characterized as a "transactional confidential informant" whose identity was subject to disclosure; (2) the government's withholding of her name infringed upon the defendant's constitutional right to a fair opportunity to present a defense by inhibiting his access to a witness; and (3) the government exaggerated the threat to P.P's safety. Id. at 5-10.

## II. DISCUSSION

    A.    Standard

As the defendant correctly notes, the defendant's motion for disclosure was a "non-dispositive" matter; under 28 U.S.C. §636(b)(1)(A), Federal Rule of Criminal Procedure 59(a) and this district's General Local Rule 72, Judge Jones properly issued an order—as opposed to a recommendation—on the defendant's motion. Rule 59(a) allows a party to object to such orders and requires that "[t]he district judge must consider timely objections and modify or set aside any part of the order that is contrary to law or clearly erroneous." Fed. R. Crim. P. 59(a).

    B.    Analysis

At the December 13, 2018 hearing, the court addressed the defendant's constitutional rights arguments. It will not revisit them here. It agreed with the government and Judge Jones that the defendant in a criminal case does not have a constitutional right to discovery.

The court also addressed the parties' arguments about whether P.P. qualified as a "tipster" or as a "transactional confidential informant." Under established Seventh Circuit precedent, "[t]he government possesses a limited privilege to withhold the identify of a confidential informant from a criminal defendant." Wilburn, 581 F.3d at 622-23 (citing Roviaro v. United States, 353 U.S. 53, 59-60 (1957)). However,"[t]his privilege evaporates if a defendant proves that the disclosure of the informant's identity 'is relevant and helpful' to his defense 'or is essential to a fair determination of a cause.'" Id.

8

> To determine whether the government is required to disclose the identity of the informant, we must balance the public interest in protecting the flow of information against the individual's right to prepare his defense. In doing so, we examine the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

Id. at 623 (internal citations and quotations from Roviaro omitted). The Seventh Circuit also has emphasized the role of the confidential informant as "an important factor" in determining the need for disclosure. United States v. Harris, 531 F.3d 507, 515 (7th Cir. 2008). Such emphasis has led to a general rule: the government generally does not need to disclose the identity of a "tipster," but may need to disclose (after performing the balancing described above) the identity of a "transactional witness." Wilburn, 581 F.3d at 623 (citing Harris, 531 F.3d at 515). Under these cases, a "tipster" is "someone whose only role was to provide the police with the relevant information that served as the foundation for obtaining a search warrant." Id. On the other hand, a "transactional witness" is someone "who participated in the crime charged against the defendant or witnessed the event in question." Id.

Sometimes a witness' role doesn't fall neatly within one or the other of those categories. See Valles, 41 F.3d at 359 ("As the Fourth Circuit has noted, many informants may occupy a middle ground status somewhere between participants and mere tipsters."). In fact, this court is not certain that it is accurate to call P.P. an "informant" at all. When this court thinks of an "informant," it thinks of someone who voluntarily involves himself or herself in an investigation. A "tipster," for example, might choose to call a police hotline

9

to report something that he or she has seen. A transactional informant chooses to work for law enforcement in an active role.

In contrast, P.P. did not volunteer to be a witness (as is often the case with transactional confidential informants). As the court understands it, she was in her own home, minding her own business, when the defendant appeared at her door. He was naked. He told her that he had just been "jacked," and asked if she had any clothes he could borrow. She provided him some clothes, and he left her home. In the investigation that followed the attempted carjacking, law enforcement learned from other witnesses that a naked man had appeared at P.P.'s door and asked for clothes. Law enforcement went to P.P. to investigate. She cooperated with them, both by speaking to them at that time and, some time later, by reviewing a photo array (from which she selected the defendant as the man who'd appeared at her door on the day of the carjacking). P.P. became involved in this case through no choice or action of her own—the defendant involved her by appearing at her door. She did nothing to involve herself other than cooperate with a law enforcement investigation.

Unlike an "informant," the only way that P.P. could have kept herself out of the investigation would have been to refuse to cooperate with the police who appeared to question her. Law enforcement relies on citizen cooperation to investigate crimes and protect the public; those citizens who cooperate should be able to rely on law enforcement to protect their safety, to the extent possible and practicable. That is not to say that tipsters and transactional informants

should not be protected. But often a tipster's information can be independently verified (law enforcement, in the court's experience, rarely relies solely on tips as *evidence*, as opposed to as *leads*), and a person can make the choice, before agreeing to become a transactional informant, whether to accept the possible risk of disclosure. An innocent citizen such as P.P., pulled into a series of events through no actions of her own, does not have that choice. This court finds that the tipster-transactional informant spectrum is not helpful in analyzing whether to require the government to disclose P.P.'s name.

Even if, however, the court agreed that P.P. constituted an "informant," as opposed to an innocent witness, the court cannot find that the defense has provided a sufficient basis for requiring the government to disclose her name in any way other than on a potential witness list, under this court's procedures, if the government decides to call her at trial. The Seventh Circuit has long held that "[t]he confidential informant privilege 'will not yield to permit a mere fishing expedition, nor upon bare speculation that the information may possibly prove useful.'" Id. at 358. The defendant must demonstrate that he possesses "a 'genuine need of informant disclosure that outweighs the public's interest [in protecting the free flow of information.]'" Harris, 531 F.3d at 515 (quoting United States v. Bender, 5 F.3d 267, 270 (7th Cir. 1993)). One way to do this, for example, would be to show that a potential defense may depend on the informant's involvement. Valles, 41 F.3d at 358.

Here, the defendant has not offered anything beyond bare speculation that talking to P.P. could reveal something. He has not argued that P.P.'s

11

testimony could bolster a trial defense. He has not pointed to any evidence implying that P.P.'s identification of the defendant was mistaken, or that law enforcement somehow influenced that identification. Defense counsel conceded at the hearing before this court that he has the photos the officers used to conduct the array from which P.P. selected the defendant—if those photos were suggestive, or if counsel had some reason to believe from the police reports that the method in which they showed them to P.P. was suggestive, he could investigate those concerns without knowing P.P.'s identity. Other than arguing that he has a constitutional right to investigate possible mistaken identification, the only fact the defendant has proffered is the fact that P.P.'s identification of the defendant did not occur until eighteen months after the attempted carjacking occurred. Dkt. No. 46 at 6. He implies that for P.P. to be able to pick out the defendant a year and a half later must meant that something improper happened.

That is not enough, in this court's view. The encounter between the defendant and P.P. was not momentary. In itself, the fact of seeing a naked stranger appear at one's door is memorable. The defendant spoke with P.P., telling her that he had been the victim of a crime and asking for clothes. She obtained clothes for him. This was more than a momentary flash, more than seeing a stranger's face for a second as that person passes by. It does not defy reason that P.P. might well remember the face of the person with whom she had that encounter. But that is not the point. The point is whether, without anything else, the passage of time between event and identification is enough

to rise above "bare speculation that [talking to P.P.] may possibly prove useful." It is not. Valles and Harris require more in order to obtain the pre-trial disclosure of the identity of a confidential informant. They require the defendant to convince the court that his "genuine need"—beyond just a generalized interest in the witness's potential testimony—outweighs the threat posed to the witness's safety. See Harris, 531 F.3d at 515 ("[a]lthough disclosure of the CI might have been helpful to Harris at the *Franks* hearing (rather than at trial), Harris has not demonstrated that he possessed a genuine need of informant disclosure that outweighs the public's interest in protecting the free flow of information.")

As to the threat to P.P.'s safety, the court agrees with the government that P.P. differs in F.W. in both her role and geographical distance, and that those differences counsel against disclosure. The defendant has argued that no one has sought to intimidate F.W., and Judge Jones said that "the government has not explained why P.P. would be at some greater risk than F.W., whose identity has been known for well over a year." Dkt. No. 44 at 8. In briefing to this court, the government highlighted the differences: F.W. was not able to identify the defendant in a photo lineup, while P.P. was. P.P.'s possession of inculpatory information increases the risk of danger that she faces as compared to F.W, who is a source of exculpatory information. The court does not mean to imply that the defendant, specifically, would undertake any malfeasance if the court were to order disclosure of P.P.'s name. But in terms of comparative risk, that difference indicates that P.P.'s risk is higher than F.W.'s.

13

The government also has informed the court that F.W. now resides "thousands of miles away" from Milwaukee, while P.P. presumably is somewhere in the area. It would be more difficult to reach someone who resides thousands of miles away than it would be to reach someone close by. This court is not persuaded by the defendant's analogy to F.W.

Nor can the court discount the violent nature of the offense with which the defendant is charged. The defendant is entitled to the presumption of innocence, and is entitled to defend himself vigorously through his counsel (as he has been doing). But that presumption does not require the court to ignore the fact that the defendants are accused of having shot someone while trying to steal his car. The defendants face significant penalties if they are convicted. There is understandable pressure and incentive to reduce the threat of conviction.

As the court noted at the December 13, 2018 hearing, it has concerns about the "attorneys-eyes-only" provision Judge Jones proposed to strike a balance between risk to P.P. and the ability of the defendant to prepare a defense. Judge Jones was correct in observing that parties abide by these sorts of "protective orders" in civil cases all the time. But while the stakes often are high in civil cases, they are monetary; a civil litigator's client does not stand to lose her freedom. The relationship between a criminal defense attorney and his client demands that the defendant be able to trust his lawyer, and to be sure that his lawyer will represent him as zealously as possible. While this court has little doubt that defense counsel in this case would abide by any order issued

by this court, his doing so could place a great strain on his relationship with his client, who understandably would want to be privy to any information the government provided. In a circumstance such as this one, where the defendant has not articulated a genuine need for P.P.'s identity other than the need to prepare his defense, this court is not willing to risk that strain.

At the December 13, 2018 hearing, the court speculated that there might be a way for the defendant to explore the circumstances of the identification without the disclosure of P.P.'s name. It wondered whether the government could provide defense counsel's contact information, or that of his investigator, to P.P., so that she could speak to him if she so chose.[2] The court adjourned the hearing to allow the parties to discuss this option (or other, similar, alternatives). On December 21, 2018, the court received a status report in which the parties informed the court that they had reached an impasse. Dkt. No. 53. The government had provided defense counsel with a draft of a joint letter to P.P., in which she would be given the option to contact defense counsel if she chose. The defense objected on a "foundational" basis, arguing that this approach "does not allow defense counsel to initiate contact with the witness, as it would if the witness' name were not withheld." Id. at 1. The defendant also made clear that it was not, in considering the government's offer, abandoning its position that only full disclosure of P.P.'s name would suffice. Id. at 1 n.1.

---

[2] The court assumed that, as with any other witness, P.P. would have the option to decline to speak to counsel or the investigator, if she so chose.

15

The defendant responded by asking the government to provide defense counsel with P.P.'s contact information; the government refused. Id.

The court understands both parties' concern with the approach the court suggested. P.P. has had contacts with law enforcement; she has some relationship with law enforcement. As the court recalls, defense counsel characterized it as P.P. being the government's witness; if the government told her that she did not have to speak to defense counsel, that would make it more likely that she might choose to elect not to speak with defense counsel than it might if defense counsel were to reach out to her directly. But defense counsel's solution—that the government give him P.P.'s contact information—raises the same concerns as the court had with the protective order. And it does not address the fact that the defendant has not met the Valles/Harris standards.

The court makes this decision based on the facts and circumstances of this case. There may come a time when the government chooses to redact information that this court deems should be disclosed. This is not that case.

The court concludes that the defendant has not demonstrated a genuine need for the disclosure of P.P.'s name (unless the government proposes to call her as a witness at trial, and discloses her name on the witness list at the time required by this court's pretrial procedures). The court also finds that the government has not exaggerated the possible risk that P.P. faces. Balancing the interests of the public and of the defendant, the court concludes that the government is not required to disclose P.P.'s name except to the extent required

16

by this court's procedures if the government intends to call her as a witness at trial. If the government intends to call P.P. at trial, it will have to disclose her name seven days before the final pretrial conference.

## III. CONCLUSION

The court **SUSTAINS** the government's objections to Magistrate Judge Jones's order. Dkt. No. 45.

The court **VACATES** Judge Jones's order to the extent that it requires the government to disclose P.P.'s name no later than sixty days prior to the final pretrial conference, on an attorneys'-eyes-only basis. Dkt. No. 44.

The court **ORDERS** that the defendant's letter motion for disclosure is **DENIED**. Dkt. No. 31.

Dated in Milwaukee, Wisconsin this 2nd day of January, 2019.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**